```
                       UNITED STATES DISTRICT COURT
                         DISTRICT OF CONNECTICUT


-------------------------------- x
PAUL ERIC LEWIS,                 :
                                 :
        Plaintiff,               :
                                 :
v.                               :   Civil No. 3:19cv11 (AWT)
                                 :
SOUTHERN CONNECTICUT STATE       :
UNIVERSITY and ASSISTANT DEAN OF :
STUDENT AFFAIRS CHRISTOPHER M.   :
PISCITELLI (in his official and  :
individual capacities),          :
                                 :
        Defendants.              :
-------------------------------- x
```

### RULING AND ORDER DISMISSING COMPLAINT

Plaintiff Paul Eric Lewis, proceeding pro se and in forma pauperis, initiated this case by way of a complaint filed on January 3, 2019 (ECF No. 1). He has since filed several amended complaints. See ECF Nos. 24, 27, 34, 63, 66, 69, and 70. The court treats his latest amended complaint, ECF No. 70, as the operative pleading. It alleges that defendants Southern Connecticut State University ("SCSU") and its Assistant Dean of Student Affairs Christopher M. Piscitelli ("Piscitelli") discriminated against the plaintiff and attempted to deprive him of his right to pursue an education at SCSU because of his disability. For the reasons that follow, the plaintiff's complaint fails to state a claim upon which

relief may be granted. Accordingly, all of his claims will be dismissed with prejudice.

I.   **FACTUAL ALLEGATIONS**

The plaintiff's complaint, liberally construed, alleges the following facts. In 2005 and 2008, the plaintiff was banned from the SCSU campus for several years on the basis of what he alleges were false reports.[1] In July 2017, the plaintiff, Piscitelli, and other SCSU personnel participated in a conciliation hearing at the behest of the Connecticut Human Rights Office (the "CHRO") to resolve the ban and the allegations surrounding its enactment. On July 20, 2017, the plaintiff received a letter from Piscitelli stating that, as of that date, "the ban from [SCSU] . . . is lifted and you are free to enjoy all of the benefits afforded to [SCSU] students." Ex. 1 (the "Piscitelli Letter"), ECF No. 70-1. Thereafter, the plaintiff applied for admission to several SCSU programs between Fall 2017 and Spring 2019. He alleges that his applications were unsuccessful because the defendants repeatedly thwarted his efforts to be accepted as a student at SCSU.

In Count I, the plaintiff alleges that SCSU attempted to reject his Fall 2017 application to its undergraduate IT program

---

[1] The 2005 and 2008 bans from the SCSU campus served as the bases of another complaint filed by the plaintiff in federal court, which was dismissed with prejudice for failure to state a claim. See Ruling and Order, Lewis v. R. Thomas Clark and the Connecticut Board of Regents, Docket No. 14-cv-1592-RNC, 2015 WL 3905315 (D. Conn. June 25, 2015).

by denying it had received the plaintiff's official transcripts from his former educational institutions, Gateway Community College, the University of New Haven[2], and Fitchburg State University. See Compl. 10, 17, 18, 19. After the plaintiff confirmed that the transcripts were received by SCSU, he was accepted into the program, but he declined to enroll.

In Counts II and III, the plaintiff alleges that Piscitelli "conspired" with the director of graduate admissions at SCSU, Lisa Galvin, "to make sure that the webpage portal for graduate application[s] would work and not work, in such a way as to ensure that applicant, Lewis, could not be accepted as a graduate student[.]" Id. at 9. Specifically, the plaintiff alleges that "the SCSU website was manipulated to show false information," including that the university never received any of his official transcripts from his former educational institutions, see id. at 16-20, that the university received a letter of recommendation that was never sent, see id., and that the plaintiff was granted an application fee waiver that he was, in fact, denied, see id. He contends that SCSU "did nothing to make it clear, on its portal, or in any other way, what [SCSU] truly received and did not receive[,]" id. at 19, in order to deny, as to Count II, his

---

[2] The plaintiff represents at various points in the complaint that he previously attended the University of New Haven, the University of New Hampshire, and/or "UNH."

November and December 2018 applications to its Department of Counseling and School Psychology programs and to deny, as to Count III, his Spring 2019 application to its Department of Public Health program. Id. at 12. He also claims that one of his former colleges, Fitchburg State University, acted in "collusion" with SCSU when it "cancelled sending his official transcript to [SCSU] until after the August 1st [application] deadline, so that it would be impossible for Plaintiff to get that transcript into [SCSU] on time." Id. at 18; see also id. at 19.

The plaintiff further alleges that Piscitelli "attempt[ed] to set the plaintiff up to be banned from campus again, as punitive action by SCSU," in December 2018. Id. at 8. According to the plaintiff, Piscitelli threatened him with legal action for lying about the conduct that resulted in his 2008 ban from SCSU's campus and "forged" an email to make it appear as if he had violated a newly issued SCSU ban that prohibited him from communicating with all SCSU staff other than Piscitelli. The complaint does not allege that any action, legal or otherwise, was taken against the plaintiff as a result of Piscitelli's alleged conduct.

The plaintiff claims that the defendants engaged in the aforementioned conduct to discriminate against him "on the grounds of 'mental' disability." Id. at 16. He alleges that SCSU "found out that [he] was on Social Security Disability due to 'Panic Disorder and Agoraphobia'" and that the defendants "had a cruel

bias and prejudice against people with a mental health label." Id. The plaintiff claims that his suspicions of discrimination were confirmed by his former mentor and therapist, Professor Francis Inman Armory of Washington State University, who the plaintiff alleges "saw everything happen[]." Id. at 20. Armory allegedly informed the plaintiff on his death bed that:

> these people talk to each other and that is why these actions were taken against you: that they truly feared you and thought you were a threat on campus, which I know you're not. This would not have happened to you if you didn't have a label of having a mental disability, which I know is merely an anxiety disorder of panic disorder and agoraphobia. They thought you were crazy. I know you're not. We really need to take action against this type of discrimination.

Id.

The plaintiff asserts a litany of claims against the defendants, including claims under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution; Connecticut's public accommodation statute, Conn. Gen. Stat. § 46a-64; Connecticut's felony forgery statute, Conn. Gen. Stat. § 53a-139; Connecticut's false reporting statute, Conn. Gen. Stat. § 53a-180c; the federal misprision statute, 18 U.S.C. § 4; breach of contract; and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 et seq. (ADA). He seeks $14,000,000 in damages and injunctive relief.

## II.   LEGAL STANDARD

28 U.S.C. § 1915, which governs in forma pauperis status, directs the court to review and dismiss an action under certain circumstances. Under subsection (e) a court "shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

An action is frivolous for purposes of § 1915(e) "if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (quoting Neitzke, 490 U.S. at 327). The "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Neitzke, 490 U.S. at 325. An action fails to state a claim to relief if it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Because "most pro se plaintiffs lack familiarity with the formalities of pleading requirements, [the court] must construe pro se complaints liberally." Lerman v. Bd. of Elections, 232 F.3d 135, 140 (2d Cir. 2000). Therefore, pro se complaints "are held to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (internal citation and quotation marks omitted). "In evaluating [a plaintiff's] complaint, [the court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in [the plaintiff's] favor." Cruz v. Gomez, 202 F.3d 593, 596-97 (2d Cir. 2000).

## III. DISCUSSION

Having reviewed the plaintiff's complaint applying the standard set forth above, the court concludes that all of his claims must be dismissed with prejudice.

With respect to the plaintiff's constitutional claims, the plaintiff alleges that the defendants violated his First, Fifth, Sixth, and Fourteenth Amendment rights in purely conclusory terms. See Compl. 7 ("This case asserts plaintiff was violated of his Civil Rights and was deprived of his Civil Rights . . . as given by the 1st, 5th, 6th, and 14th amendments to The United States Constitution."). No factual allegations whatsoever are offered in

support of these claims. Accordingly, they fail to state a claim upon which relief can be granted.[3]

The plaintiff's claims under Conn. Gen. Stat. § 46a-64, Conn. Gen. Stat. § 53a-180c, Conn. Gen. Stat. § 53a-§ 139, and 18 U.S.C. § 4 are also without merit. Conn. Gen. Stat. § 46a-64 does not provide a private right of action. See Traylor v. Awwa, 899 F.Supp.2nd 216, 221 (D. Conn. 2012) (citing cases). And the plaintiff has no right to sue the defendants, or insist they be prosecuted, for alleged violations of criminal statutes. See Hill v. Didio, 191 F. Appx. 13, 14-15 (2d Cir. 2006) ("[C]rimes are prosecuted by the government, not by private parties.") (citing CT Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 86-87 (2d Cir.1972)).

With respect to the plaintiff's claim for breach of contract, the plaintiff has not pled facts that could establish the existence of a contract between the plaintiff and the defendants. To properly allege a breach of contract, the plaintiff must establish "the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." Meyers v.

---

[3] The plaintiff's constitutional claims also fail on other grounds. For example, the plaintiff's allegations do not implicate the Sixth Amendment because he does not allege that he was prosecuted for a crime. Nor do they implicate the Fifth Amendment, as the Fifth Amendment constrains only federal, not state, actors. Ambrose v. City of New York, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009). The defendants are not federal actors.

Livingston, 311 Conn. 282, 291 (2014). With regard to the first element, the Connecticut Appellate Court has stated:

> [T]o form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties. The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act. [The] agreement must be definite and certain as to its terms and requirements.

Bartomeli v. Bartomeli, 65 Conn.App. 408, 414 (2001).

The plaintiff alleges that the Piscitelli Letter was "presented" to him as a "written contract by [SCSU] to accept Lewis on its premises and to accept Lewis as a student-applicant should Lewis ever decide to apply to SCSU." Compl. 9. He claims that this contract was breached by the defendants' alleged attempts to thwart his acceptance to SCSU. These allegations are insufficient to give rise to a reasonable inference that a contract existed. The plaintiff does not allege facts that could establish that there was any manifestation of mutual assent between the parties; nor does he allege facts showing that an agreement with definite and certain terms was reached. The plaintiff simply alleges that a contract existed and this conclusory assertion is insufficient to state a claim.

With respect to the plaintiff's ADA claims, the court concludes that the plaintiff's allegations do not support a plausible inference that the plaintiff is entitled to relief. Title II of the ADA provides: "Subject to the provisions of this

subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prove a violation of Title II, the plaintiff must establish: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability. <u>Mary Jo C v. New York State and Local Retirement System</u>, 707 F.3d 144,153 (2d Cir. 2013). A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). "Major life activities" are further defined to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

The plaintiff has failed to plead facts that could establish that he was "disabled" within the meaning of the ADA and that he was discriminated against because of a disability. Although the plaintiff alleges that he has panic disorder and agoraphobia, he

does not allege any additional facts that plausibly suggest that such mental illnesses substantially limited one or more of his major life activities. See, e.g., Tylicki v. St. Onge, 297 Fed.Appx. 65, 67 (2d Cir. Oct.28, 2008) (holding that the plaintiff's complaint did not adequately plead a disability under Title II of the ADA where it contained no allegations describing how his alleged mental condition substantially limited a major life activity). Moreover, the plaintiff has failed to allege a causal connection between his disability and the defendants' actions. The complaint does not suggest that the defendants made any statements or engaged in any conduct reflecting animus towards people with disabilities. The complaint does not allege that the plaintiff received different treatment or consideration than non-disabled applicants because of his disability. Instead, stripped of its conclusory allegations of "bias and prejudice," the complaint asserts only that the defendants (1) knew that the plaintiff has panic disorder and agoraphobia and (2) rejected his applications for admission to three of its programs after denying it had received complete applications. These allegations are insufficient to state a plausible claim for relief under Title II.

**IV. CONCLUSION**

For the foregoing reasons, the plaintiff's complaint (ECF No. 70) is hereby dismissed with prejudice.

It is so ordered.

Dated this 2nd day of July 2020, at Hartford, Connecticut.

                                                    __/s/ _AWT_____
                                                       Alvin W. Thompson
                                        United States District Judge